UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/28/22

| | |
|---|---|
| MARTIN J. WALSH, *United States Secretary of Labor*, | |
| Plaintiff, | 19-CV-9302 (ALC) |
| -against- | |
| RUANE, CUNNIFF & GOLDFARB, INC. ET AL., | **OPINION & ORDER** |
| Defendants. | |

**ANDREW L. CARTER, JR., United States District Judge:**

The Court now considers Motions by Defendants Ruane, Cunniff & Goldfarb Inc. ("RCG"), Robert D. Goldfarb ("collectively "RCG Defendants"), DST Systems, Inc. ("DST"), the Advisory Committee of the DST Systems, Inc. 401(k) Profit Sharing Plan ("DST Advisory Committee"), the Compensation Committee of the Board of Directors of DST Systems, Inc. ("DST Compensation Committee"), Gregg W. Givens, Gerard M. Lavin, M. Elizabeth Sweetman, Douglas W. Tapp, George L. Argyros, Lawrence M. Higby, Travis E. Reed, Lowell L. Bryan, Samuel G. Liss, Brent L. Law, Lynn Dorsey Bleil, Jerome H. Bailey, Gary D. Forsee, Charles E. Haldeman, Jr., Randall D. Young, and Kenneth Hager (collectively "DST Defendants") to dismiss the Complaint of Plaintiff Martin J. Walsh, United States Secretary of Labor ("Secretary") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the reasons that follow, Defendants' motions are **DENIED**.

---

[1] Martin J. Walsh is substituted for Eugene Scalia pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d) (stating that a public officer's successor is automatically substituted as a party when the officer ceases to hold office while action is pending).

1

## BACKGROUND

The following facts are taken from allegations contained in the Secretary's Complaint and are presumed to be true for purposes of resolving Defendants' motions to dismiss. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

DST is a global provider of technology-based information processing and servicing solutions for the financial and healthcare industries. DST was the sponsor and administrator of a 401(k) Profit Sharing Plan (the "Plan"), which had a 401(k) plan component and a profit sharing plan component ("PSP"). DST, the DST Advisory Committee, and the DST Compensation Committee exercised discretionary authority or control over the Plan. The individual defendants (apart from Defendant Goldfarb) were members of the DST Advisory Committee and the DST Compensation Committee. Defendant Hager served as a member of the DST Advisory Committee from 2011 until 2013.

In the 1970s, DST appointed RCG, an investment advisor, to serve as the PSP's investment manager. RCG managed 100 percent of the PSP's assets. RCG had complete investment power and control over the PSP's assets, and its agreement with DST acknowledged RCG as a fiduciary for the assets under its management. Defendant Goldfarb served as Chairman and CEO of RCG until March 31, 2016. Until that time, Defendant Goldfarb was the PSP's portfolio manager and held final decision-making authority for RCG's investments for the PSP. RCG served as the PSP's investment manager until July 31, 2016.

RCG managed the PSP's assets using its explicit investment strategy of "non-diversification," by which it invested the PSP's assets on a concentrated basis in a small number of securities and held those investments for a long period of time. In accordance with this strategy, RCG heavily invested the PSP's holdings in a Canadian pharmaceutical company, Valeant

Pharmaceuticals International, Inc. ("Valeant"), between April 2010 and June 2016. In July 2015, Valeant stock composed 45.4 percent of the PSP's assets. It was not until May 2014 that the DST Advisory Committee discussed concerns with RCG's investment strategy and the increasing concentration in Valeant stock. In August 2015, the DST Advisory Committee directed RCG to limit investments in any one security to no more than 25 percent of the PSP's portfolio. At the same time though, DST afforded RCG discretion regarding when and how to effectuate this limit. DST terminated its contract with RCG in July 2016. Additionally, the DST Advisory Committee never met its obligation, per the Plan document, to establish a "written investment policy" for the PSP.

On October 8, 2019, the Secretary initiated the present action under the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1001 *et seq*., against Defendants.[2] The Secretary alleges that all Defendants were fiduciaries with respect to the Plan. Defendants violated their fiduciary duties of diversification, loyalty, and prudence under ERISA by employing RCG's non-diversification strategy for the PSP's assets. The Secretary additionally alleges that the DST Defendants failed to follow the Plan document by not establishing a written investment policy for the PSP and that they failed to monitor RCG. Further, the Secretary alleges the DST Defendants are liable as co-fiduciaries for RCG's breaches.

**STANDARD OF REVIEW**

---

[2] Although the Complaint was filed on October 8, 2019, the Secretary and Defendants entered into a tolling agreement that provided that the limitations period would be tolled as of March 19, 2019. *See* Recher Decl. Ex. K, ECF No. 128-11 ¶¶ 3–4. On a motion to dismiss, the Court may consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007). The Court takes judicial notice of the tolling agreement. The Court also takes judicial notice of the Forms 5500. *See Cunningham v. Cornell Univ.,* No. 16-cv-6525, 2017 WL 4358769, at *3 (S.D.N.Y. Sept. 29, 2017) (taking judicial notice of Form 5500 filings, explaining that "[c]ourts regularly take notice of publicly available documents including regulatory filings").

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

## DISCUSSION

Defendants argue that the Complaint is time-barred by the applicable statutes of limitation and repose. Additionally, Defendant Hager and RCG each argue that the Secretary fails to state a plausible claim that they are liable for breach of their fiduciary duties. The Court will address each argument in turn.

**I.      Six-Year Statute of Repose**

Defendants argue that the Secretary's Complaint is barred by ERISA's statute of repose. ERISA imposes a statute of repose by which breach of fiduciary duty suits must be filed within six years of "(A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation." 29 U.S.C. § 1113(1). As a result of the tolling agreement entered into by the parties, the relevant period is from March 19, 2013 through October 8, 2019. Defendants assert that the Secretary's claims are untimely as the fiduciary breaches resulted from conduct—the initial hiring of RCG by DST—that occurred in the 1970s, significantly earlier than March 19, 2013. The Secretary counters that Defendants owed continuing fiduciary duties to the Plan and they breached these duties throughout the statutory period.

Defendants are correct that the Secretary would be barred from bringing its claims if the only breaches alleged related to DST's decision to hire RCG in the 1970s. *See Ello v. Singh*, 531 F. Supp. 2d 552, 568 (S.D.N.Y. 2007) (dismissing as untimely claim that decision to retain fund administrator was a breach of fiduciary duty). However, the Complaint alleges that Defendants owed continuing fiduciary duties to the Plan distinct from the initial hiring of RCG and Defendants breached these duties during the statutory period. For example, the Secretary alleges that the RCG Defendants breached their duties by continuing to apply a strategy of non-diversification when investing the PSP's assets and by failing to adjust the investments as they became overly-concentrated in individual stocks. Compl. ¶¶ 32, 35, 39, ECF No. 1. With respect to the DST Defendants, the Complaint alleges breaches of their fiduciary duties through failures to monitor the PSP's assets and diversify them once the DST Defendants learned that the assets were overwhelmingly invested in just a few individual stocks. *Id.* ¶¶ 45–46. The Secretary also alleges, as seen through the Complaint's discussion of the DST Advisory Committee's meetings, that the

DST Defendants failed to monitor RCG, *id.* ¶¶ 44–53, and failed to establish a written investment policy as required by the Plan, *id.* ¶¶ 54–56.

As fiduciaries, Defendants held "a continuing obligation to advise the [Plan] to divest itself of unlawful or imprudent investments," *Buccino v. Cont'l Assur. Co.*, 578 F. Supp. 1518, 1521 (S.D.N.Y. 1983), a "duty to take action upon discovery that the appointed fiduciaries [were] not performing properly," *Liss v. Smith*, 991 F. Supp. 278, 311 (S.D.N.Y. 1998), and "a duty to monitor . . . with reasonable diligence and to withdraw the investment if it became clear or should have become clear that the investment was no longer proper for the Plan." *Whitfield v. Cohen*, 682 F. Supp. 188, 196 (S.D.N.Y. 1988).

The Supreme Court has made clear that where a continuing violation is alleged, the statute of limitations analysis examines later breaches of ongoing fiduciary duties rather than an initial investment decision. *Tibble v. Edison Int'l*, 575 U.S. 523, 529–30 (2015). In *Tibble*, the Court held that the lower court erred in concluding that ERISA claims for breach of fiduciary duties were untimely on account of the fiduciaries' initial selection of funds without evaluating the ongoing nature of the fiduciaries' duties. Drawing upon principles of trust law, the *Tibble* Court stated that "the duty of prudence involves a continuing duty to monitor investments and remove imprudent ones," which "exists separate and apart from the . . . duty to exercise prudence in selecting investments at the outset." *Id*. at 529, 530.

The Secretary alleges that Defendants breached their duty of prudence and the ongoing duty to review the PSP's investments. In a case where the plaintiff alleges "a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones. . . . so long as the alleged breach of the continuing duty occurred within six years of suit, the claim is

6

timely." *Id.* at 530. The Complaint's allegations include breaches of continuing duties dating after March 19, 2013. Accordingly, the Secretary's claims are not barred by ERISA's statute of repose.

## II.     Three-Year Statute of Limitations

Under ERISA, the six-year statute of repose is accelerated when the plaintiff has actual knowledge of the breach. Suits must be brought within "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113(2). The parties dispute whether the Secretary had the requisite knowledge of the breaches so as to be barred from bringing suit. "Actual knowledge does in fact mean what it says . . . ." *Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 775–76 (2020) (internal quotations marks and citation omitted). Specifically, actual knowledge means "knowledge that is actual, not merely a possible inference from ambiguous circumstances." *Id*. at 775. The Second Circuit has long held that actual knowledge in the ERISA fiduciary breach context requires the plaintiff to have "knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001). Indeed, "[t]he term actual knowledge is strictly construed and constructive knowledge will not suffice." *Browe v. CTC Corp.*, 15 F.4th 175, 191 (2d Cir. 2021) (quoting *L.I. Head Start Child Dev. Servs. v. Econ. Opportunity Comm'n of Nassau County,* 710 F.3d 57, 67 (2d Cir. 2013)).

Defendants argue that the Secretary had actual knowledge of the alleged conduct as a result of the written filings, the Forms 5500, that DST annually filed with the Department of Labor. At the motion to dismiss stage, Defendants' argument fails. The Supreme Court in *Sulyma* held that if "a plaintiff is not aware of a fact," the plaintiff "does not have 'actual knowledge' of that fact however close at hand the fact might be," even if the plaintiff "received numerous disclosures" about the plans at issue. *Sulyma*, 140 S. Ct. at 774, 777. Defendants contend that *Sulyma* does not

7

apply to the Secretary because unlike the private plaintiff in *Sulyma*, the Secretary is charged with reviewing the relevant plan information—the Forms 5500—as part of its regulatory duties. However, Defendants provide no binding caselaw for this distinction. Further, the *Sulyma* opinion acknowledges the Secretary's position that "the Secretary will have a hard time [bringing suits] within § 1113(2)'s timeframe if deemed to have actual knowledge of the facts contained in the many reports that the Department receives from ERISA plans each year." *Id*. at 778.

At the least, discovery is needed to ascertain whether the Secretary obtained "actual knowledge" from the Form 5500 filings. *See Bona v. Barasch*, No. 01-cv-2289, 2003 WL 1395932, at *16 (S.D.N.Y. Mar. 20, 2003) (holding that "factual development on the issue" was needed in order to "conclude that the Forms 5500 gave plaintiffs actual knowledge of the 'essential facts' of the transactions constituting the violation"). Thus, at this stage, the Secretary's claims cannot be dismissed based on the statute of limitations.

### III. RCG and Defendant Hager's Breach of Fiduciary Duties

In addition to arguing that the Complaint is barred by ERISA's statutes of limitations and repose, RCG and Defendant Hager each argue that the Complaint fails to adequately plead that they breached their fiduciary duties under ERISA. RCG argues that the Complaint alleges that RCG breached its fiduciary duty by using its strategy of non-diversification for 100 percent of the PSP's assets, but RCG cannot be liable for DST's decision to allocate all PSP assets to RCG. RCG also argues that the Complaint does not plausibly allege that its investment strategy violated ERISA. Defendant Hager contends that the Complaint does not plausibly allege that his role on the Advisory Committee caused the losses alleged by the Secretary.

#### A. RCG's Breaches of Fiduciary Duties

RCG challenges the Complaint by arguing that the Secretary improperly alleges that RCG breached a non-existent fiduciary duty to determine the percentage of the assets it manages. In so doing, RCG makes much of the Complaint's references to RCG's use of its non-diversification strategy for 100% of the PSP's assets. RCG asserts that it was not obligated to know the percentage of assets under its management. This is an overly-narrow reading of the Complaint. With respect to RCG, the Complaint's core allegations are instead that RCG mismanaged the PSP by concentrating its assets in certain individual stocks through application of its non-diversification strategy, leading to risks of large losses and resulting in large losses such that RCG violated ERISA's duties of loyalty, prudence, and diversification. It is worth noting, however, that diversification under ERISA does require that "a prudent fiduciary . . . consider the facts and circumstances of each case," including "the amount of the plan assets" and "the type of investment." *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.,* 712 F.3d 705, 717 (2d Cir. 2013) (quoting *In re Unisys Sav. Plan Litig*., 74 F.3d 420, 438 (3d Cir.1996)). Thus, "the prudence of each investment is not assessed in isolation but, rather, as the investment relates to the portfolio as a whole." *Id.* Accordingly, RCG's management of 100 percent of the PSP's assets *is* relevant to the fiduciary breach allegations.

RCG also argues that DST was fully apprised of RCG's investment strategy and therefore any ERISA violations related to RCG's investments are attributable to DST, not RCG. Irrespective of DST's knowledge of RCG's investment strategy and investments, RCG was accountable for its fiduciary obligations. The Complaint alleges that RCG's agreement with DST acknowledged that RCG "was a fiduciary regarding all assets in the portfolio it managed for the Plan." Compl. ¶ 9. RCG's agreement with DST establishes RCG as a fiduciary under ERISA. *See Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1218 (2d Cir. 1987) (stating that investment manager's "position

9

as an ERISA fiduciary is simply beyond doubt" where agreement explicitly intended for defendant to be an ERISA investment manager). As a fiduciary and investment manager, RCG was responsible for "[e]nsuring the prudent management of a properly diversified portfolio . . . regardless of [DST's] actions in this case." *Severstal Wheeling, Inc. Ret. Comm. v. WPN Corp.*, 119 F. Supp. 3d 240, 267 (S.D.N.Y. 2015), *aff'd sub nom. Severstal Wheeling, Inc. v. WPN Corp.*, 659 F. App'x 24 (2d Cir. 2016).

The Secretary's claims for breach of fiduciary duty under ERISA thus survive RCG's motion to dismiss.

### B. Hager's Breach of Fiduciary Duties

Defendant Hager argues that his role on the Advisory Committee terminated in October 2013, before the loss in the value of Valeant shares and before the Advisory Committee's alleged actions vis-à-vis Valeant occurred. However, the Secretary alleges that the DST Defendants—including Defendant Hager—breached their fiduciary duties by omission. Namely, the Complaint alleges that the losses that ultimately befell DST transpired because of the DST Defendants' inaction over the course of many years in failing to monitor and correct RCG's imprudent investments and application of its non-diversification strategy. Similarly, the Complaint alleges that the Advisory Committee failed to establish a written investment policy for the PSP as mandated by the Plan's document. As alleged in the Complaint, these breaches by omission persisted for many years, including during Defendant Hager's time as a member on the Advisory Committee.

### CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motions to dismiss. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 116, 117, 126, and 130. The

Clerk of Clerk is instructed to substitute Martin J. Walsh, United States Secretary of Labor, as named plaintiff in this case.

**SO ORDERED.**

**Dated: March 28, 2022**
      New York, New York

                                         **ANDREW L. CARTER, JR.**
                                         **United States District Judge**